UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| GainJet Aviation S.A. | * | |
| Vouliagmenis Avenue & 1 | | |
| Themistokleous st, 16674 | * | |
| Glyfada | | |
| Athens, Greece | * | |
| | | |
| Plaintiff, | * | Civil Action No. |
| | | |
| v. | * | **JURY TRIAL DEMANDED** |
| | | |
| Joseph (aka Yosef) Davids | * | |
| d/b/a Tri-Star Aerospace, LLC | | |
| 7213 Chalkstone Dr., Apt. B-2 | * | |
| Baltimore, MD 21208 | | |
| | * | |
| Defendant. | | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## COMPLAINT

Plaintiff, GainJet Aviation S.A. ("GainJet"), by its undersigned attorneys, hereby brings the following Complaint against Defendant, Joseph (akaYosef) Davids ("Defendant"), alleging violation of the United Nations Convention on Contracts for the International Sale of Goods ("CISG") and intentional misrepresentation, and in support thereof, alleges as follows:

## PARTIES

1.      Plaintiff GainJet is a Greek share company and has its principal place of business at Vouliagmenis Avenue & 1, Themistokleous st, 16674, Glyfada, Athens, Greece.

2.      At all times relevant hereto, Defendant Joseph (aka Yosef) Davids was a resident of Maryland and the owner and president of Tri-Star Aerospace, LLC ("Tri-Star"), a Maryland limited liability company which is not in good standing. Defendant's principal place of business is 7213 Chalkstone Dr., Apt. B-2, Baltimore, MD 21208.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to

28 U.S.C. §§ 1331, which provides that "district courts shall have original jurisdiction of

all civil actions arising under the Constitution, laws, or treaties of the United States."  GainJet

brings this claim under the CISG, a United States treaty.

4.      The Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant

to 28 U.S.C. § 1367(a) because they are substantially related to its federal claims and arise out of

the same case or controversy.

5.      This Court has both general and specific personal jurisdiction over Defendant

because, upon information and belief, Defendant transacts business in this State and judicial

district, and derives revenue from this State and judicial district.

6.      Venue is proper in the District of Maryland in accordance with 28 U.S.C. § 1391

because a substantial part of the events or omissions that give rise to these claims have occurred

in this judicial district.

## FACTS

7.      Plaintiff GainJet is a worldwide private jet charter operator and management

company.

8.      Defendant Joseph Davids, as owner and President of Tri-Star Aerospace, LLC,

held himself out to Defendant as buying and selling aircraft parts and brokering repairs of

aircraft parts.  Tri-Star Aerospace, LLC, is no longer in good standing with the state of Maryland

and its website is no longer operational.

9.      All communications between Defendant and GainJet as described herein took place by email correspondence, telephone communication, or wire transfer.

10.     On June 1, 2016, GainJet sought to purchase two flap track replacement parts ("parts") for its aircraft from Defendant.  Defendant responded by offering the parts to GainJet on June 1, 2016.

11.     GainJet sought certification documentation for the parts' airworthiness through FAA Form 8130-3, Airworthiness Approval Tag, ("Airworthiness Approval Tags") before payment.  Defendant claimed that he was unable to provide Airworthiness Approval Tags, but promised GainJet that the parts were in the process of being tagged. Defendant further promised that GainJet could see the documentation after GainJet sent a purchase order and wired funds to Defendant.

12.     GainJet informed Defendant that it needed to see draft Airworthiness Approval Tags for each part before proceeding with payment to show that the parts were in the process of being tagged as Defendant had promised.  Defendant provided draft Airworthiness Approval Tags to GainJet on June 24, 2016.

13.     After receiving the draft tags, GainJet sent a purchase order to Defendant on or about June 24, 2016, which Defendant accepted on or before June 30, 2016.

14.     GainJet notified Defendant that it would prepare a wire transfer, which GainJet informed Defendant would take time given the United States July 4th holiday and international banking delay. Defendant confirmed that this was acceptable on July 4, 2016.

15.     In reliance on Defendant's promise to deliver the parts, GainJet wired funds as requested to Defendant on July 5, 2016 in the amount of USD 19,900, which the Defendant received on July 5, 2016.

16.     Two days after paying for the parts, GainJet again requested authentic Airworthiness Approval Tags on July 7, 2016.  Defendant immediately confirmed that he would do so by email.

17.     Despite GainJet's payment and Defendant's repeated promises to deliver the parts and provide authentic Airworthiness Approval Tags, on July 17, 2016, ten days after Defendant made his latest promise to honor his contract with GainJet, Defendant informed GainJet that the parts were sold to someone else, claiming that the delay between GainJet's submission of the purchase order and the wire transfer of USD 19,900 was unacceptable and the parts therefore could not be held for GainJet.  At no time previously did Defendant indicate that the timing of GainJet's payment would cause the parts to be sold to someone else. In fact, on July 4, 2016, one day before Defendant received confirmation of the wire transfer, Defendant confirmed that the timing of GainJet's payment was acceptable and gave no indication that the parts had been sold to another buyer.

18.     Upon learning this, GainJet requested return of its payment to Defendant in the amount of USD 19,900 on or before July 22, 2016 unless Defendant could procure other parts.

19.     Receiving no response from Defendant, GainJet again requested the parts or return of its money by August 5, 2016.

20.     Defendant refused to return the payment and informed GainJet that if it wanted the parts it paid for, it would have to pay an additional USD 4,100 for each part.

21.     To date Defendant refuses to return payment for parts GainJet never received.

22.     As a result of Defendant's acts, GainJet has suffered damages of at least USD 19,900 to date.

## COUNT I – Breach of Contract Under the United Nations Convention on Contracts for the International Sale of Goods

23.     The allegations of paragraphs 1 through 22 are incorporated herein by reference.

24.     GainJet contracted with Defendant to purchase airline parts on June 1, 2016.

25.     GainJet paid Defendant for the parts on July 5, 2016 in the amount of USD 19,900, as mutually agreed by the parties.

26.     Defendant refused to deliver the parts to GainJet in breach of the contract between the parties and demanded that GainJet pay an additional amount of USD 8,200 above that which GainJet paid in satisfaction of the parties' agreement in order for the parts to be delivered on or about August 5, 2016.

27.     Due to Defendant's complete failure to make delivery and failure to make delivery despite GainJet's providing an additional period of time for Defendant to deliver the goods or return GainJet's payment, Defendant has fundamentally breached the parties' contract and the contract is avoided.

28.     As a direct and proximate result of Defendant's fundamental breach of contract, GainJet has been injured in its business and property in the amount of USD 19,900.

## COUNT II – Intentional Misrepresentation

29.     The allegations of paragraphs 1 through 28 are incorporated herein by reference.

30.     Defendant's statements that he would deliver flap track parts to GainJet for USD 19,900 constitute assertions of a false representation of a material fact to GainJet.

31.     Defendant knew that the representations were false when he made them. Defendant wanted to induce GainJet to make a payment for parts which Defendant may never have had the right to sell, for which Defendant did not have proper documentation, and which Defendant used to lure GainJet into making a payment with the intention to make further false

5

representations about the parts' availability for purposes of inducing GainJet to make further payments to Defendant. Thus, Defendant's representations were made for the purpose of defrauding GainJet.  The representations made by Defendant to GainJet were made with the intention of having GainJet act and rely upon them.

32.     GainJet's action of submitting a purchase order, entering into an agreement with Defendant, and wiring funds to Defendant in the amount of USD 19,900 were accomplished in reliance on Defendant's statements, and GainJet was justified in its reliance because of the many emails and telephone conversations it had with Defendant.

33.     As a result of the intentional misrepresentations made by Defendant, GainJet suffered damages in the amount of USD $19,900.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to the following:

A.     That judgment be entered in the amount of at least USD $19,900, plus interest, costs, attorneys' fees, and treble damages;

B.     That this Court award Plaintiff such other and further relief that this Court deems just and proper.


Dated:  November 23, 2016                    /s/ J. Stephen Simms
                                             J. Stephen Simms (#4269)

6

Simms Showers LLP

201 International Circle
Baltimore, Maryland 21030

410-783-5795
jssimms@simmsshowers.com

*Counsel for GainJet Aviation S.A.*